In re SANSHOE WORLDWIDE
CORPORATION, Debtor.

HART ENVIRONMENTAL MANAGE-
MENT CORPORATION; McLaren/Hart
Environmental Engineering Corpora-
tion, Appellants,

v.

SANSHOE WORLDWIDE CORPO-
RATION; EBG Midtown South
Corporation, Appellees.

Nos. 125, 379, Dockets 92–5029, 92–7391.

United States Court of Appeals,
Second Circuit.

Argued Sept. 16, 1992.

Decided May 5, 1993.

Thomas R. De Rosa, New York City (Edward G. Bailey, Michael S. Re, Beveridge & Diamond, of counsel), for appellants.

Jonathan L. Flaxer, New York City (Winick & Rich, of counsel), for appellee Sanshoe Worldwide Corp.

Richard L. Claman, New York City (Seiden, Stempel, Bennett & D'Agostino, of counsel), for appellee EBG Midtown South Corp.

Before OAKES, KEARSE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Hart Environmental Management Corporation and McLaren/Hart Environmental Engineering Corporation (collectively "Hart") appeal from an order of the United States District Court for the Southern District of New York, Leonard B. Sand, *Judge*, that affirmed an order of the United States Bankruptcy Court for the Southern District of New York, Prudence B. Abram, *Bankruptcy Judge*, and granted summary judgment for EBG. 139 B.R. 585 (S.D.N.Y.1992). The bankruptcy court had approved, with modifications, a stipulation assigning to a third party the benefit of Hart's sublease of certain premises.

## BACKGROUND

On July 15, 1986, Sanshoe Worldwide Corporation ("Sanshoe"), as tenant, entered into separate ten-year leases with landlord 470 Park South Associates, L.P. ("470 Park") for two floors—the eleventh and twelfth—at 470 Park Avenue South. On January 9, 1990, Sanshoe also leased from 470 Park a part of the ninth floor in the same building. Ten days later, Sanshoe sublet the building's eleventh floor to Hart. The sublease was to expire in August 1996, simultaneously with Sanshoe's lease from 470 Park.

Sanshoe then experienced financial problems and, significantly for this appeal, failed to timely pay its rent to 470 Park for December 1990, January 1991, and February 1991. As a result, 470 Park initiated three separate eviction proceedings in the City Court of the City of New York. In the meantime, and despite Sanshoe's nonpayment to the landlord, Hart continued to pay Sanshoe the rent required under the sublease for the eleventh floor. In March 1991 Sanshoe filed for bankruptcy protection under chapter 11 of the bankruptcy code. On March 23, 1991, Hart vacated the eleventh floor, stopped paying rent under its sublease, and moved its business elsewhere.

Under the bankruptcy law, a chapter 11 debtor such as Sanshoe is permitted under certain circumstances to assume and assign an unexpired lease or sublease; alternatively, it may reject a lease. *See* 11 U.S.C. § 365(c). Seeking to mitigate its liability under the leases, Sanshoe entered into a stipulation with 470 Park and EBG, 470 Park's corpo-

rate general partner, whereby, subject to the approval of the bankruptcy court, Sanshoe would reject the leases for the ninth and twelfth floors, but would assume the lease for the eleventh floor and assign it to EBG, along with Sanshoe's sublease to Hart of that space, which had already been vacated by Hart.

Sanshoe then sought an order approving the stipulation from Bankruptcy Judge Abram. Hart objected, relying on 11 U.S.C. § 365(c)(3), which precludes the assumption or assignment of a lease where "such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief." Hart claimed that issuance of a warrant of eviction in the proceeding initiated by 470 Park in response to Sanshoe's nonpayment of the December rent had terminated Sanshoe's paramount lease, and thus Hart's sublease as well.

At the hearing on Hart's objection to the stipulation, Hart argued that before Bankruptcy Judge Abram could approve the stipulation assigning the lease and sublease, she would have to make an explicit finding that the leases being assigned were valid and subsisting. After hearing testimony, including that of Nicholas Carlozzi, Sanshoe's chief financial officer, Bankruptcy Judge Abram disagreed. At one point during the hearing she stated that she

did not need to make [a] finding that there is a valid subsisting lease and * * * I could approve this transaction on an assignment of all of the debtor's right, title and interest, if any, and I, therefore, would not have to make that finding. * * * The debtor had not been in fact evicted or locked out of the premises. So I have to accept Mr. Carlozzi's testimony that as between the parties, the parties reinstated the lease and kept it alive and viable. * * * I only need to find that the debtor has some apparent right, title and interest sufficient to permit the debtor [to make an assignment]. * * *

Here there is no question but that the debtor is in actual possession of this space under some claim of right, * * *. [L]iti-

gating the actual rights is not material to approving the transaction * * *.

Thus, while Bankruptcy Judge Abram did find that Sanshoe had some interest in the lease and sublease, she did not make an explicit finding as to whether they had terminated. After considering all of Hart's objections to the validity of the lease and sublease, Bankruptcy Judge Abram approved the stipulation, but significantly modified it. Her order, dated May 9, 1991, provided in relevant part:

ORDERED, that the Debtor be, and hereby is, authorized to assume and assign to EBG the Debtor's right, title, and interest, if any, in and to the Paramount Lease and the Sublease, and *no warranty as to the validity of the Paramount Lease or the Sublease is made by the Debtor;* and it is further

ORDERED, that the Sixth "Whereas" clause in the Stipulation which provides, *"WHEREAS, Debtor warrants that the Sublease is in full force and effect and is binding upon Debtor and Hart,"* be, and hereby is, deleted; and it is further

ORDERED, that the Court makes no findings or conclusions with respect to Hart's claims, as set forth in the Objections, that the Paramount Lease or the Sublease terminated * * *.

(emphasis supplied).

As highlighted by the underscored language, while she approved the assumption and assignment of the lease and sublease to EBG, Bankruptcy Judge Abram specifically excised from the proposed stipulation those provisions that would have warranted the validity of the leases. As a result, the order relieved Sanshoe of future liability with regard to the validity of the leases, and the assignee (EBG) and the landlord (470 Park) assumed the risk of any future litigation that might invalidate them. On May 20, 1991, Hart appealed the bankruptcy court's order to the district court.

Five days earlier, however, on May 15, 1991, Hart had brought a declaratory judgment action in New York State Supreme Court asking that court to find that the sublease had terminated and that Hart was no longer obligated to pay rent. The same

day, EBG had sued in federal district court for a declaratory judgment that when Hart vacated the premises in March it had abandoned them and thereby entitled EBG to liquidated and other damages under the sublease.

EBG's diversity action was assigned to Judge Sand. While Hart's appeal of the bankruptcy court's order originally was assigned to Judge Conboy, EBG requested and was granted a transfer of the bankruptcy appeal to Judge Sand as a related case under Local Division of Business Rule 15(c).

As a result, Judge Sand had both the bankruptcy appeal and EBG's declaratory judgment action before him, and for purposes of his decisions he consolidated the two proceedings. In a single opinion dated March 6, 1992, Judge Sand affirmed the bankruptcy court's order approving the stipulation that assigned Hart's sublease to EBG, and also granted to EBG partial summary judgment declaring that the sublease term had been terminated, not by Sanshoe's actions, but by Hart's abandonment of the premises, and that Hart remained liable under the sublease for rent and liquidated damages. Judge Sand referred EBG's claim for damages to a magistrate judge for an inquest.

As to the appeal from the bankruptcy court's order, Judge Sand noted that 11 U.S.C. § 365(c)(3) "requires [the bankruptcy court] to make a threshold inquiry into the existence of a lease for nonresidential real property before it can approve assumption or assignment of that lease", that the bankruptcy court "should have made more formal findings regarding the legal status of the lease", and that the bankruptcy court had "erred by not undertaking this review." Judge Sand also noted that the normal remedy would be to reverse and remand for further findings as to whether the lease had terminated.

However, in the same opinion, Judge Sand squarely addressed and decided the lease-termination issue when he granted to EBG summary judgment on its claim that Hart had abandoned the eleventh floor and was therefore liable for damages under the subleases. In opposing summary judgment,

Hart had claimed that the paramount lease, and with it the Hart sublease, had been terminated in January by 470 Park's first landlord-tenant proceeding against Sanshoe for nonpayment of the December 1990 rent. Hart claimed that the Civil Court of the City of New York had issued a warrant of eviction in that proceeding, and that under state law the warrant had terminated the lease, and thereby relieved Hart from any further liability for rent.

Judge Sand rejected Hart's argument. He concluded that Sanshoe had paid its December rent by check to 470 Park on January 7, 1990, that this check was dated and cancelled on January 7, and that the civil court had not issued its judgment and warrant of eviction until two days later, on January 9. Thus, Judge Sand reasoned, Sanshoe's payment of the rent had, under New York law, nullified the issuance of the warrant.

Judge Sand further concluded that even if acceptance of the check had not nullified the warrant, the landlord subsequently initiated nonpayment proceedings for both January and February, and that these actions constituted a waiver of the earlier eviction warrant and a revival of the landlord-tenant relationship. In short, Judge Sand granted partial summary judgment declaring that neither the underlying lease nor Hart's sublease had been terminated.

Relying on that conclusion, Judge Sand viewed the bankruptcy court's failure to make a formal finding that the leases had not been terminated as harmless error. He therefore affirmed the bankruptcy court's order approving the stipulation.

Hart filed three notices of appeal: one from the affirmance of the bankruptcy court, case no. 92–5029; one from the partial summary judgment in EBG's federal court diversity action, case no. 92–7391; and one covering both orders.

## DISCUSSION

*A. Partial Summary Judgment.*

As discussed above, Judge Sand granted partial summary judgment, determining that Hart had abandoned the premises and thereby left itself liable for rent and other dam-

ages. Before considering the merits of the summary judgment, we must first take up our jurisdiction to review that nonfinal order.

### 1. *Pendent Appellate Jurisdiction.*

█ That part of Judge Sand's March 6, 1992, order that affirmed the bankruptcy appeal is properly appealable to this court. *See* 28 U.S.C. § 158(d). Normally, of course, that part of the order that granted partial summary judgment on the abandonment claim and referred the action to a magistrate judge for the calculation of damages would not be reviewable by us until a final judgment was entered. *See Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 1206–07, 47 L.Ed.2d 435 (1976) (partial summary judgments limited to liability issues are not final appealable orders within meaning of 28 U.S.C. § 1291).

█ In certain narrow circumstances, however, we may exercise pendent appellate jurisdiction where review of an appealable order—in this case, the district court's affirmance of the bankruptcy order—requires consideration of issues germane to the otherwise nonappealable order. *See generally* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3937, at 269–71 (1977).

We recognize that " 'pendent appellate jurisdiction is a procedural device that should rarely be used because of the danger of abuse.' " *McCowan v. Sears, Roebuck & Co.,* 908 F.2d 1099, 1105 (2d Cir.) (quoting *Akerman v. Oryx Communications, Inc.,* 810 F.2d 336, 339 (2d Cir.1987)), *cert. denied,* 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990). Nevertheless, we think invoking this procedural device here is appropriate, given the circumstances of this case. Our consideration of the bankruptcy court's order necessarily requires us to review whether the bankruptcy court's error was harmless, and that, in turn, requires us to determine whether the district court properly held that the Hart sublease was not terminated.

The relevant questions in the two proceedings are not only related, they are identical; no additional parties are brought in by addressing the nonfinal order; and invoking pendent appellate jurisdiction under the un-usual circumstances of this case enables us to avoid the formality of a remand to the bankruptcy court for further proceedings whose outcome would be foreordained by Judge Sand's partial summary judgment. In these circumstances, we think it proper to exercise pendent appellate jurisdiction over Hart's appeal from the district court's grant of partial summary judgment.

### 2. *The Lease–Termination Issue.*

█ We review the district court's grant of summary judgment *de novo. See Burt-nieks v. City of New York,* 716 F.2d 982, 985 (2d Cir.1983). The movant has the "initial burden of establishing that there is an absence of any genuine issue of material fact", *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)), and we must draw all reasonable inferences in favor of the nonmoving party. Applying these principles, we conclude that the district court properly determined that there was no genuine issue of material fact with regard to the abandonment issue.

█ New York law provides that the issuance of a warrant of eviction cancels a lease, but that a court may vacate the warrant prior to its execution upon a showing of good cause, *see* New York Real Property Actions and Proceedings Law § 749(3), and good cause is established when the landlord fails "to accept a proper tender of rent made prior to issuance of a warrant". *New York City Housing Auth. v. Torres,* 61 A.D.2d 681, 403 N.Y.S.2d 527, 529 (1st Dep't 1978) (per curiam). *A fortiori* here, where at least two days prior to issuance of the warrant, Sanshoe not only *tendered* the rent, but 470 Park *accepted* it, the eviction warrant could have no effect. Consequently, there was no termination of either the underlying lease or Hart's sublease.

Hart contends that there is a disputed issue of fact, because the recollection of Sanshoe's chief financial officer with regard to payment of the December rent did not jibe with EBG's description of the event. Judge Sand, however, relied not on recollections,

but on records: Sanshoe's cancelled check and the state court judgment. In the face of that clear documentary evidence, Hart's claimed inconsistencies amount to little more than mere speculation and are insufficient to stave off summary judgment.

In light of our conclusion that payment and acceptance of the December rent forestalled any termination effect the subsequent warrant of eviction might otherwise have had, we need not address Judge Sand's alternative basis—waiver and revival—for determining that the lease and sublease were still in effect. We therefore affirm the grant to EBG of partial summary judgment.

### B. The Bankruptcy Appeal.

■ Essentially, Hart claims that the bankruptcy court committed reversible error by failing to find that the lease and sublease were in effect. For the reasons discussed below, we agree with the district court that the bankruptcy court erred, but that the error was harmless.

Hart argues that the district court erred when it affirmed the bankruptcy appeal, because the district court made its own factual findings as to whether the lease terminated, when such findings should have been made in the first instance by the bankruptcy court. To support its argument, Hart relies on several cases for the reasonable proposition that the district court acts as an appellate court in reviewing a bankruptcy court's judgments. *See, e.g., Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987).

We agree that the bankruptcy court failed to make the necessary specific findings as to whether the lease and sublease had terminated. However, we also agree with the district court that, in light of the incontestable demonstration, based on uncontroverted documents, that the lease and sublease were both in effect, the bankruptcy court's failure was harmless error.

■ Hart is wrong in suggesting that the harmless error rule, *see* Fed.R.Civ.P. 61, does not apply to bankruptcy proceedings. As Judge Newman noted in *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 647 (2d Cir. 1988) (citations omitted):

Bankruptcy Rule 9005 adopts for the purposes of bankruptcy proceedings Fed. R.Civ.P. 61, which provides that "no error or defect in any ruling or order or in anything done or omitted by the court" is ground for disturbing an order "unless refusal to take such action appears to the court inconsistent with substantial justice" and the court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." * * * The harmless error rule has been invoked in the bankruptcy context where procedural irregularities, * * * would not have had an effect on the outcome of the case.

Applying harmless-error principles here is particularly appropriate because, had the issue been addressed by the bankruptcy court, we already know that there is not even a triable issue over whether the leases had been terminated.

■ We reject Hart's suggestion that Judge Sand improperly "imported" factual findings from the summary judgment motion into his consideration of the bankruptcy appeal. Both matters were properly before him as related cases. Hart had a full opportunity to set forth its position on the key issue. Considering the matters in tandem constituted an efficient use of judicial resources and deprived neither Hart nor any other party of any substantial right.

### CONCLUSION

The district court's grant of partial summary judgment to EBG is affirmed. The district court's order affirming the order of the bankruptcy court is also affirmed.