### In re 611 SIXTH AVENUE CORP., Debtor.

### Bankruptcy No. 95 B 43395 (SMB).

United States Bankruptcy Court,
S.D. New York.

Jan. 26, 1996.

Dresner & Henle, New York City (Byron Dresner, of counsel), Kolodny & Kolodny, New York City (Peter Kolodny, of counsel), for Debtor.

Solomon, Fornari, Weiss & Moskowitz, P.C., New York City (Richard L. Garbus, Joseph P. Vidulich, of counsel), for 151 Reade Street Parking Corp.

## MEMORANDUM DECISION REGARDING MOTION TO EXTEND TIME TO ASSUME OR REJECT NONRESIDENTIAL LEASE

STUART M. BERNSTEIN, Bankruptcy Judge.

The debtor has moved to extend the time within which to assume or reject its nonresidential real estate lease. Its Landlord maintains that the debtor cannot assume the lease because it terminated prepetition. This issue requires us to consider the apparent conflict between *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095 (2d Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994) and *Hart Envtl. Management Corp. v. Sanshoe Worldwide Corp. (In re Sanshoe Worldwide Corp.),* 993 F.2d 300 (2d Cir.1993). We conclude that the debtor is entitled to a brief extension, but we point out some of the pitfalls of the rule of law that results from the reconciliation of these two cases.

### FACTS

#### A. The Default and Termination of the Lease

The debtor operates a restaurant at 611 Sixth Avenue in New York City. It rents

space from 151 Reade Street Parking Corp. (the "Landlord") under a twelve-year lease dated December 16, 1993, and commencing February 1, 1994. Before the filing, the debtor engaged contractors to do construction work, but did not pay them. As a consequence, they filed mechanics' liens aggregating over $200,000.00 against the Landlord's property.

Article 3 of the lease requires the tenant to discharge mechanics' liens against the premises, that result from the tenant's work, within ten days after they are filed. The debtor failed to do so. The Landlord then sent a Notice of Default and Notice of Cure ("Cure Notice"), dated February 13, 1995, in accordance with the terms of the lease. This gave the debtor fifteen days to cure the default (*i.e.*, discharge the mechanics' liens); if it did not, the Landlord could terminate the lease. After receiving the Cure Notice, the debtor neither cured the default nor applied to the state court for a "Yellowstone" injunction to toll the running of the cure period. *See First Nat'l Stores, Inc. v. Yellowstone Shopping Ctr., Inc.*, 21 N.Y.2d 630, 237 N.E.2d 868, 290 N.Y.S.2d 721 (1968). Accordingly, an Event of Default occurred under the lease.

Article 17.2 of the lease states that if an Event of Default occurs, the Landlord can terminate the lease on three days notice:

> [U]pon the expiration of such 3–day period, this Lease and the Term and all rights of Tenant under this Lease shall expire and terminate ... as of the date specified in the notice given for any other Event of Default, as if such Date were the Expiration Date and Tenant immediately shall quit and surrender the Premises, but Tenant shall remain liable for damages as hereinafter provided.

By Notice of Termination ("Termination Notice"), dated March 3, 1995, the Landlord advised the debtor that due to the failure to cure the default, the lease would expire and terminate on March 10, 1995.

## B. The Holdover Proceeding

On or about March 24, 1995, the Landlord commenced a holdover proceeding, but failed to attach the affidavits of service of the Cure and Termination Notices to the petition. The debtor filed an answer that denied all of the allegations in the verified petition, and asserted eleven affirmative defenses. The answer challenged, *inter alia*, the content and service of the Cure and Termination Notices. The debtor subsequently moved to dismiss the petition, basing its motion, in part, on the Landlord's failure to attach the affidavits of service. The Landlord attached the affidavits to its papers opposing the motion to dismiss, and cross-moved for leave to amend the petition.

By decision and order dated July 14, 1995, the state court denied the motion to dismiss, and granted the motion to amend the petition. Further, it deemed the affidavits, attached to the Landlord's opposition papers, to be incorporated into the petition and the amended petition to be served *nunc pro tunc*, once the Landlord served a copy of the decision and order with notice of entry. The debtor then had ten days to serve its answer.

On July 18, 1995, the Landlord served the notice of entry of the decision and order on the debtor; the debtor had until August 2, 1995, to answer the amended petition.[1] The debtor never did so. Instead, it filed this chapter 11 case on August 4, 1995, only a few days before the scheduled trial of the holdover proceeding.[2]

## C. The Extension Motions

The debtor filed its first motion to extend the time within which to assume or reject the lease on September 14, 1995. The Landlord countered that the lease had terminated prepetition by virtue of the service of the Termination Notice.[3] The debtor replied by at-

---

1. Under N.Y.Civ.Prac.L. & R. 2103(b)(2) (McKinney Supp.1995), the debtor receives an additional five days, or a total of fifteen days from the date of mailing, to serve its answer.

2. The debtor states, without explanation, that it filed its bankruptcy before the period to answer expired.

3. We agree with the Landlord that Article 17.2 is a conditional limitation under New York law. *See, e.g., Family Showtime Theatres of Bay Parkway, Inc. v. Toys "R" Us–Nytex, Inc. (In re Family Showtime Theatres, Inc.),* 72 B.R. 38, 41–43 (E.D.N.Y.), *aff'd without opinion,* 819 F.2d 1130 (2d Cir.1987); *In re Yachthaven Restaurant, Inc.,*

tacking the state court decision, and arguing that the lease could not terminate without the issuance of a warrant of eviction. We granted the debtor's motion, and *sua sponte*, ruled at that time that *Orion* precluded us from adjudicating the termination issue in connection with an assumption or extension motion.

On or about November 9, 1995, the debtor made the present motion to again extend the time within which to assume or reject the lease. The Landlord objected, raising several issues but only one concerns us.[4] It questioned our reliance on *Orion*, and citing *San-shoe*, argued that we must decide whether the lease terminated prepetition since if it did, the debtor cannot assume it. 11 U.S.C. § 365(c)(3). Without conceding our authority to decide the termination issue, the debtor made two responses to this contention. First, the Landlord failed to properly serve the Termination Notice. Second, the Landlord failed to properly serve the notice of petition and petition in the holdover proceeding.

## DISCUSSION

### A. Introduction

■ Section 365(d)(4) grants the debtor-lessee sixty days from the petition date to assume a nonresidential lease; otherwise, the lease will be deemed rejected. The bankruptcy court may extend the sixty-day period if the debtor makes a timely motion and establishes "cause." The Bankruptcy Code does not define "cause," but case law has amplified its meaning. "Cause" consists of several factors, including (1) the significance of the lease to the debtor's business and the plan (2) whether reversion will produce a windfall to the landlord, (3) whether the

debtor has had sufficient time to appraise its financial situation and the potential value of the lease to the formulation of its plan, (4) the complexity of the case and number of leases it involves, (5) *the need for a judicial determination as to whether a lease exists,* (6) the failure to pay postpetition use and occupancy or comply with other lease obligations, (7) whether the landlord has suffered damage that is not compensable under the Bankruptcy Code, (8) inability to formulate a plan within sufficient time, and (9) any other facts showing the lack of a reasonable time to decide whether to assume or reject. *See Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 105–06 (2d Cir.1982); *Escondido Mission Village L.P. v. Best Products Co.,* 137 B.R. 114, 117 (S.D.N.Y.1992); *In re Babylon Ltd. Partnership,* 76 B.R. 270, 274 (Bankr. S.D.N.Y.1987); *In re Wedtech Corp.,* 72 B.R. 464, 471–72 (Bankr.S.D.N.Y.1987).

■ The very existence of the lease presents a threshold issue. Section 365(c)(3) prevents a debtor from assuming a lease of nonresidential real property that "has been terminated under applicable nonbankruptcy law prior to the order for relief." It follows that a bankruptcy court should not grant an extension of time to assume or reject a lease if finds that the lease terminated before the petition date. *See, e.g., Family Showtime Theatres of Bay Parkway, Inc. v. Toys "R" Us–Nytex, Inc. (In re Family Showtime Theatres, Inc.),* 72 B.R. 38, 42–43 (E.D.N.Y.) (affirming bankruptcy court's refusal to extend time to assume or reject unexpired lease based on the bankruptcy court's finding that the lease had terminated under a conditional limitation prior to the petition), *aff'd without opinion,* 819 F.2d 1130 (2d Cir.1987); *cf. In re Cohoes Indus. Terminal, Inc.,* 62 B.R. 369, 377 (Bankr.S.D.N.Y.) (holding that

---

103 B.R. 68, 74 (Bankr.E.D.N.Y.1989). The lease would terminate automatically by virtue of a properly served notice of termination and without regard to subsequent eviction proceedings. *In re Family Showtime Theatres, Inc.,* 72 B.R. at 41 (quoting 2 J. Rasch, *New York Landlord and Tenant* § 752 (2d ed. 1971)); *First Nat'l Stores, Inc. v. Yellowstone Shopping Ctr., Inc.,* 21 N.Y.2d at 637–38, 237 N.E.2d at 870–71, 290 N.Y.S.2d at 725.

4. The Landlord claimed that the debtor had not paid postpetition use and occupancy The debtor, however, has substantially complied with its lease obligations. In addition, the Landlord contended that the debtor's construction violated the various building codes. In support, it proffered a letter from an architect that quotes what we assume are pertinent provisions of the New York City Building Code governing the debtor's construction. The only specific violation mentioned relates to the failure to file an equipment use permit for air conditioning.

the automatic stay does not apply to a lease that was terminated by the landlord prepetition, and stating in *dicta* that the debtor-lessee cannot assume such a lease), *aff'd*, 70 B.R. 214 (S.D.N.Y.1986), *aff'd in unpublished order*,[5] 831 F.2d 283 (2d Cir.1987).

## B. *Sanshoe*

In *Sanshoe*, the district and circuit courts focused on the bankruptcy court's obligation to resolve the disputed status of a lease in connection with a motion to assume that lease. The debtor in *Sanshoe* leased space and subleased a portion. Prior to the petition, the state court issued a warrant of eviction, but the landlord subsequently accepted rent, and never executed the warrant.[6] The debtor's sublessee paid rent for two months after the commencement of the case, but then moved out.

The debtor eventually sought authority, with its landlord's consent, to assume and assign the lease and sublease to the landlord's affiliate. The sublessee objected, arguing that the issuance of the warrant of eviction had terminated the prime lease and its sublease. The debtor then commenced a federal declaratory judgment action, maintaining that the sublease terminated due to the sublessee's abandonment.[7] The bankruptcy court granted the motion, but declined to decide whether the lease and sublease had terminated. Instead, the bankruptcy court's order merely authorized the debtor to assume and assign whatever interest the debtor had in the lease and sublease.

On appeal, the district court disagreed with the bankruptcy court's approach. Section 365(c)(3), it held, required the bankruptcy court to make a "threshold inquiry" into the existence of the lease, and make "more

formal findings regarding the legal status of the lease," before it could approve the assumption or assignment. *EBG Midtown South Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 592 (S.D.N.Y.1992), *aff'd*, 993 F.2d 300 (2d Cir.1993). However, the district court simultaneously determined the summary judgment motions pending in the declaratory judgment action, and ruled that the lease had not terminated. *Id.* at 593–95. Rather, the sublessee had abandoned the premises. *Id.* at 597. Consequently, the bankruptcy court's failure to make these findings was harmless error. *Id.* at 592.

The Second Circuit Court of Appeals affirmed. It agreed that the bankruptcy court had erred because it "failed to make the necessary specific findings as to whether the lease and sublease had terminated." 993 F.2d at 305. It also agreed, however, that the error proved harmless. *Id.* Yet only four months later, in *Orion*, the Second Circuit ultimately reversed the bankruptcy court for doing precisely what *Sanshoe* seemed to require.

## C. *Orion*

Orion, a motion picture distributor, and Showtime, a cable television programmer, entered into a prepetition licensing and distribution agreement. Showtime subsequently claimed that Orion breached the contract, and accordingly, relieved it of its contractual obligations. After Orion filed for bankruptcy, it simultaneously moved to assume the contract and commenced an adversary proceeding against Showtime claiming anticipatory breach. Orion sought money damages, a declaration of the parties' rights, specific performance and permission to assume the

---

5. In a related proceeding, *Baker v. Latham Sparrowbush Assocs.*, 1995 WL 737460 at *3 (2d Cir. Dec. 6, 1995), the Court provided the text of its unpublished affirmance. It states, in pertinent part, as follows:
 We agree with the Bankruptcy and District Courts that the leasehold was not "property of the estate" at the time of filing because the Debtor's property interest in the leasehold had been terminated prior to the filing.

6. The landlord commenced two subsequent non-payment proceedings, but no additional warrants of eviction issued before the bankruptcy stayed further action.

7. The sublessee also commenced a declaratory judgment action in state court. The underlying dispute, however, was litigated and decided in the federal district court.

contract.[8] The bankruptcy court tried the breach issue in connection with the assumption motion. It found no breach, authorized assumption and dismissed the adversary proceeding as moot.

The district court affirmed, *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 149 B.R. 342 (S.D.N.Y.1992), but the Court of Appeals reversed. *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095 (2d Cir.1993). The bankruptcy court, it held, "erred because it misapprehended the fundamental nature and purpose of the motion to assume." *Id.* at 1098. A motion to assume a contract is summary, and should be efficient and swift. *Id.* It is not the time for prolonged discovery or a lengthy trial involving disputed issues. *Id.* at 1098–99. Further, disagreeing with contrary cases,[9] the Court ruled that section 365 did not authorize the bankruptcy court to resolve questions involving the validity of contracts in the context of assumption motions. *Id.* at 1099. Instead, the bankruptcy court should exercise its business judgment like any other businessman who lacks the ability to resolve disputed issues. *Id.*

The Court of Appeals expressed an additional concern. Assumption motions "always involve contracts," and disposition by the bankruptcy court in a summary proceeding "could usurp litigants' Seventh Amendment jury-trial rights." *Id.* The bankruptcy court must treat the motion to assume and the adversary proceeding conceptually separate, even if it tries them together. *Id.*. Further, its assumption decision is not a "formal ruling on the underlying disputed issues, and thus will receive no collateral estoppel effect." *Id.* Since the ruling lacks any preclusive effect, another court—or even the same bankruptcy court—may reach a different

conclusion after it tries the underlying dispute:

> In a given case, a bankruptcy court might decide that it would be beneficial for the trustee or debtor-in-possession to assume a certain contract because the court thinks it unlikely that a court would hold that the debtor had breached the contract, and thus assuming the contract would be a good "business judgment." This "business judgment" could turn out to be wrong, however, if a later fact finder in an adversary proceeding decides that the underlying contract was in fact breached. In such a case, the judge's wrong decision is simply an error of business judgment, not legal error.

*Id.*

*Orion* did not cite to *Sanshoe.* Others, however, have noted their inconsistency without reconciling the two cases. *See, e.g., United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n, Inc. (In re United States Lines, Inc.),* 169 B.R. 804, 818 n. 14 (Bankr.S.D.N.Y.1994) (Conrad, J.) (*Orion* is inconsistent with actual practice and *Sanshoe* ); *In re Best Products Co.,* 168 B.R. 35, 68 (Bankr.S.D.N.Y. 1994) (Brozman, J.) (*Orion* "silently departed" from *Sanshoe* ), *appeal dismissed as moot,* 177 B.R. 791 (S.D.N.Y.), *aff'd,* 68 F.3d 26 (2d Cir.1995); Jonathan L. Flaxer, *Bankruptcy Court Power to Adjudicate Contract Disputes,* 2 Am.Bankr.Inst.L.Rev. 369, 394–95 n. 196 (1994) (implying that *Sanshoe* ignored the non-core nature of the termination issue, and that the *Sanshoe* bankruptcy court followed the jurisdictionally and procedurally correct approach that is consistent with *Orion* ).

It would be very tempting to distinguish the cases by their subject matter; *Sanshoe* dealt with a lease termination, and *Orion* dealt with the breach of a commercial con-

---

**8.** Orion subsequently withdrew its requests for relief other than a declaration of rights and permission to assume.

**9.** *E.g., In re L.T. Ruth Coal Co.,* 66 B.R. 753, 757–58 (Bankr.E.D.Ky.1986) (bankruptcy could determine whether debtor had breached sublease to pay mining royalties in connection with the debtor's motion to assume); *In re Nexus Communications, Inc.,* 55 B.R. 596, 598 (Bankr.E.D.N.C.

1985) ("The determination of the dispute concerning the status of a lease is a necessary part of the bankruptcy court's determination of the motion to assume the lease...."); *In re National Sugar Refining Co.,* 21 B.R. 196, 198 (Bankr. S.D.N.Y.1982) (in connection with assumption motion, bankruptcy court resolved disputed lease provision regarding distribution of profits from later assignment).

tract. Arguably, section 365(c)(3) empowers the bankruptcy court to determine the status of the lease, but no provision grants like power to resolve contract disputes. We must, however, reject this distinction for two reasons. First, the language and holding of *Orion* are too broad to support this distinction. Second, the *Orion* Court expressly rejected the reasoning of *In re Nexus Communications, Inc.*, 55 B.R. 596, 598 (Bankr. E.D.N.C.1985), in which the bankruptcy court held that section 365 authorized it to decide such traditional noncore matters as lease defaults and terminations as core matters in connection with an assumption motion.

### D. The "Marriage" of *Sanshoe* and *Orion*

Our task then is to reconcile two seemingly divergent cases. Initially, the two cases involved different concerns. *Sanshoe* dealt with the nature of the bankruptcy court's inquiry on an assumption motion. While *Orion* also addressed the nature of the inquiry, it was equally concerned with the preclusive effect of the result of that inquiry.

 *Orion* does not change the duty under *Sanshoe* to make this inquiry. Presumably, *Orion* permits the bankruptcy court to take evidence in connection with its threshold inquiry into whether there is a lease or contract to assume or reject; most businessmen would not buy a "pig in a poke." *Orion* makes clear, however, that the court should not engage in extensive, lengthy litigation to resolve factual disputes, and its decision does not have preclusive effect in the plenary litigation of the underlying dispute. Where the assumption motion and plenary proceeding are both pending before the same bankruptcy judge, he or she can try them together but must recognize their procedural separateness.

The *Orion* approach raises serious practical problems in connection with deciding assumption motions. First, the nature of the bankruptcy court's inquiry remains uncertain. Ordinarily, a court reviews, under well-recognized jurisprudential rules, the business judgment exercised by others. With an assumption motion, however, we do not merely consider the debtor's business judgment. Instead, we exercise—and possibly substitute—our own. *Orion* indicates that the expedited inquiry in the latter case differs from the usual judicial inquiry in the former, but these differences remain undefined.

Second, although the bankruptcy court's assumption decision lacks preclusive effect, and the court deciding the underlying dispute may reach a different result, a bankruptcy court's "judgment call" nevertheless has an immediate impact that cannot be easily undone. To assume a lease, a debtor-lessee must satisfy 11 U.S.C. § 365(b)(1). Among other things, the debtor must cure or provide adequate assurance that it will promptly cure past defaults. 11 U.S.C. § 365(b)(1)(A). Similarly, the debtor must compensate the landlord for pecuniary losses caused by its default, or provide adequate assurance that it will promptly do so. 11 U.S.C. § 365(b)(1)(B). The bankruptcy court frequently resolves disputes regarding these amounts when deciding assumption motions,[10] and fixes the amounts that the debtor must pay immediately, or at the latest promptly, to assume the lease.

In a case like the present one, we might approve the assumption of the debtor's lease based upon a threshold inquiry that turns out to be wrong because another court subsequently tries the underlying dispute and finds that the lease terminated prepetition. In that situation, the debtor may have paid a substantial amount (*e.g.*, $200,000.00 to satisfy mechanics' liens) to assume a lease that does not exist. Further, the debtor may have no recourse in that situation. It procured the assumption order, and cannot complain that the bankruptcy court erred in approving it. And the landlord, who received a priority payment on account of a prepetition claim, is not likely to object. Accordingly, any lawyer that represents a debtor in a contested assumption motion may commit malpractice by failing to commence and expe-

---

**10.** The bankruptcy court may "misjudge" these amounts in light of subsequent litigation. Under *Orion*, the determination of these amounts on assumption motions is an exercise of business judgment without collateral estoppel effect.

dite a plenary proceeding to resolve the disputed termination issue.[11]

### E. The Debtor's Current Motion

 Since the debtor's pending motion merely seeks to extend rather than assume or reject the lease, the nature of our threshold inquiry is even more nebulous and possibly a waste of time; if the debtor never moves to assume the lease, it will be deemed rejected at the end of the extension period, and we may never have to determine its status. Consequently, we decline to follow the lead of the bankruptcy court in *Family Showtime Theatres,* and instead, look to *In re Wedtech Corp.,* 72 B.R. 464 (Bankr. S.D.N.Y.1987) to guide our inquiry.

The debtor-lessee in *Wedtech* sought additional time to assume or reject a nonresidential real estate lease, but simultaneously commenced an adversary proceeding maintaining that it was not a "true lease" governed by section 365. The bankruptcy court discussed the factors governing the motion, *id.* at 471–72, and noted that they included "the need for judicial determination of whether a lease exists." *Id.* at 472. The bankruptcy court remarked on the uncertain nature of the lease, and considered the allegations in the adversary proceeding to resolve the debtor's motion:

> The mere commencement of an adversary proceeding should not, in our judgment, weigh heavily in favor of granting an extension absent an examination of that proceeding. But here, such an examination reveals that the proceeding can hardly be said to be frivolous or interposed primarily for the purpose of gaining the desired extension.

*Id.*

Here, neither the debtor nor the Landlord has commenced an adversary proceeding to determine the status of the lease, and specifically, whether it terminated prepetition. Nor has either party moved for relief from the automatic stay to continue the state court proceeding. Nevertheless, the debtor assert-

ed an affirmative defense in that litigation that the Landlord had failed to properly serve the Termination Notice. In an affidavit sworn to December 8, 1995, Barton Fleishman, the debtor's vice president, states that the Landlord served an envelope containing only the first page of the Termination Notice and the second page of the Cure Notice. Since this statement is made under oath and under the penalty of perjury, we are not prepared to say at this juncture that the claim is frivolous or interposed for delay.

Furthermore, the other factors discussed above weigh in favor of granting the extension. The lease is the debtor's primary asset and essential to the plan. According to the current motion, the debtor has "invested a considerable amount of money in the premises ... and has constructed a restaurant in the premises which is presently operating." (Debtor's Application, dated Nov. 9, 1995, at ¶ 8.) Although the filing of the mechanics' liens shows that the debtor has not paid for all of this construction, no one has argued that the debtor has failed to pay for at least some of it. Accordingly, reversion may confer a windfall on the landlord. Further, to avoid additional mechanics' liens, the parties have agreed that before the debtor can do additional work, it must escrow the cost and its contractor must deliver a written lien waiver. In addition, the debtor has paid postpetition use and occupancy, and is substantially current with its lease obligations.

While the case is not complex and involves only one lease, the case is also only four months old. The debtor claims that it cannot afford to assume the lease. (Debtor's Application at ¶ 7.) It needs more time to resolve the mechanics' liens, and has met with some of the mechanics' lienors to resolve the amounts due them. (*Id.* at ¶ 8). The debtor, therefore, needs additional time to settle these claims in order to decide whether it can or will assume or reject the lease. (*Id.* at ¶ 9). This justification loses its force over time, but we are inclined to give the debtor additional time at this early stage of the case.

---

11. We leave for another day the effect of the later "reversal" on the order approving assumption. Thus, we decline to speculate whether any party, including an assignee, can reopen the assump-

tion application, or sue to recover a cure overpayment (by the debtor or assignee) or an underpayment (by the landlord).

## CONCLUSION

Accordingly, we will grant the debtor's motion to extend the time within which to assume or reject the lease for an additional thirty days from the date of this order. This corresponds with the termination of the extension period that the debtor originally sought in its application filed in November. This should also afford the debtor sufficient time to make the assumption/rejection decision in this case. In granting the extension, however, we caution the debtor that if it takes no steps in this or another court to immediately resolve the termination issue, it may eventually find that although it has cured defaults it has no lease.

SETTLE ORDER ON NOTICE.