**In re P.J. CLARKE'S RESTAURANT CORP. and D.L. Restaurant, Inc., Debtors.**

**Nos. 01–11902, 01–11903(ALG).**

United States Bankruptcy Court, S.D. New York.

July 31, 2001.

Warshaw Burstein Cohen, Schlesinger & Kuh, LLP, New York City, Warren R. Graham, Esq., Of Counsel, for the Debtors.

Stemple, Bennett, Claman & Hochberg, P.C., New York City, Richard L. Claman, Esq., Of Counsel, for Metropolitan 919 3rd Avenue LLC.

## MEMORANDUM OF DECISION

ALLAN L. GROPPER, Bankruptcy Judge.

P.J. Clarke's is one of the oldest and best-known names in the New York restaurant world. Erstwhile bearer of the title of saloon, it has been open since 1904 and operated by its current owners since 1949. Located in a small, turn-of-the-century brownstone on the corner of Third Avenue and 55th Street, Clarke's is physically overwhelmed by the modern, high-rise office building that takes up the rest of the block.[1] The restaurant contends that it is at present not only dominated by the office building, now known as 919 Third Avenue, but that its business has been severely damaged by virtue of scaffolding, erected by the building, that nearly envelops it.

As a result of many factors, which are disputed by the parties but may include the changing character of the tavern business, a significant loss of tenants at 919 Third Avenue, the scaffolding, and mismanagement, and notwithstanding its venerable name, P.J. Clarke's has come on

---

1. The New York Times had this to say at the time of the instant Chapter 11 filing: "Known for its cheeseburgers and its clientele—Frank Sinatra, Aristotle Onassis, Louis Armstrong—Clarke's also became famous in the 1960's for its battle with real estate developers who wanted to raze it. In the end, Clarke's remained at the corner of 55th and Third Avenue, and the developers put up the 47–floor office tower next door. As part of a complex deal, the developer ... did buy the little building that housed the saloon and leased it back to Clarke's for 99 years." Leslie Eaton, "P.J. Clarke's, an East Side Fixture, Files for Bankruptcy Protection," *N.Y. Times*, April 4, 2001, sec. B, p. 4.

hard times. In April of this year P.J. Clarke's Restaurant Corp. (the "Debtor"), lessee of premises owned by 919 Third Avenue LLC (the "Landlord"), and D.L. Restaurant, Inc. ("D.L."), an affiliate that operates the restaurant on the premises, filed for Chapter 11 protection. The Landlord's predecessor had also come on hard times, and went through a Chapter 11 proceeding in 2000. The Landlord purchased 919 Third Avenue out of that bankruptcy and became lessor under the Lease with the Debtor.

Shortly after it took title to the premises, the Landlord acted to terminate the Lease for the Debtor's failure to pay rent for more than five months (at a monthly rate of $18,666.67 per month) plus $54,041.08 for New York City water and sewer charges. The Landlord relied on a "conditional limitation" clause in the Lease that required payment of rent without set-off or counterclaim, and brought summary holdover proceedings against the Debtor in the Civil Court, New York County.[2] The Debtor defended on the basis that the scaffolding erected around its premises breached the Lease, depriving it of necessary income, and that the offset of rent was justified under another provision of the Lease. In a decision and order dated March 20, 2001, Judge Karen Smith of the Civil Court held that the Debtor had no legal justification under the Lease for failing to pay rent, that any damage claims it had against the Landlord would have to be pursued in a separate, plenary proceeding, and that the Landlord had properly terminated the commercial Lease pursuant to the conditional limitation clause, as of December 15, 2000. It issued an order of summary judgment, granting the Landlord possession, with the warrant to issue forth-

with, and set the matter down for a hearing on use and occupancy, i.e., the amounts that the Debtor would be responsible for paying for the premises during the period after the deemed termination of the lease on December 15, 2000. Before judgment was entered, or any further proceedings took place, the Debtor and D.L. filed under Chapter 11 of the Bankruptcy Code.

A few days after the Chapter 11 petitions, the Landlord filed a motion for a declaration that the Lease had terminated prior to the filing and, under § 541(b)(2) of the Bankruptcy Code, was not property of the estate and could not be assumed by the Debtor; in the alternative, the Landlord moved for relief from the automatic stay to issue the warrant and evict the Debtor and/ or continue the Civil Court proceedings. The Debtor interposed several procedural defenses and argued, in effect, that the Civil Court was simply wrong. In an oral decision issued April 27, 2001, this Court held that it was bound by the determination of the State Court, whether or not it was incorporated in a final judgment, and that the Debtor could only obtain review of that decision by appeal to the New York State Appellate Term. See, e.g., Kelleran v. Andrijevic, 825 F.2d 692 (2d Cir.1987) cert. denied, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988). This Court stated that it would consider a prompt motion by the Debtor for permission to appeal, Barbier v. Shearson Lehman Hutton, Inc., 943 F.2d 249 (2d Cir.1991), and hear from the Landlord as to any conditions to be imposed on the appeal. See Transcript of Hearing of April 27, 2001, p. 44. It denied the Landlord's motion for relief from the stay, without prejudice to renewal, based on the case being in its very early stages and the

**2.** This opinion will refer throughout to P.J. Clarke's Restaurant Corp., the lessee, as the "Debtor." D.L. Restaurant, an affiliate and

alleged subtenant of the Debtor, was not a party to the State court proceedings.

Landlord's failure to demonstrate "cause" for relief from the stay within the meaning of 11 U.S.C. § 362. *See* Transcript of Hearing of April 27, 2001, pp. 46–47.

The Debtor subsequently moved for relief from the automatic stay to appeal the decision of the Civil Court. The Landlord filed a new motion seeking to vacate the automatic stay and condition any appeal by the Debtor on payment of use and occupancy at the "fair market rental" during the pendency of the appeal. The motions were heard on May 24, 2001, at which time the Court found no basis to deny the Debtor's motion to appeal, *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285–1286 (2d Cir.1990), subject to a later determination of the amount of the post-petition payments to be made by the Debtor during the pendency of the appeal. An order was entered on June 12, 2001, granting the Debtor permission to appeal and conditioning the appeal on its prompt perfection and prosecution and on payment of a minimum of the rent at the Lease amount during the post-petition period. It reserved the one remaining issue, whether the Debtor need only pay the base rent as set out in the Lease pending resolution of the appeal or whether it must pay the fair market rental value, it being assumed that "fair market value" would be an amount much greater than the Lease rent.

The Debtor contends that the plain meaning of the 1984 Amendments to the Bankruptcy Code requires payment of rent only at the Lease rate, and obviates any need to examine the question of fair market value. The Landlord argues that § 365(d)(3) of the Bankruptcy Code is not determinative under the circumstances of this case and that the Court should require payment of "use and occupancy" on the grounds that such amounts would be payable under State law, and that only such payments would provide the Landlord with "adequate protection" under the circumstances of this case. Resolution of the issue requires, at the outset, an analysis of the text of as well as the purpose and effect of the 1984 Amendments to the Bankruptcy Code.

*The 1984 Amendments to the Bankruptcy Code*

█ The 1984 Amendments to the Bankruptcy Code were intended to assure a lessor under a nonresidential real property lease the right to post-petition performance under an unexpired lease. *See In re Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125, 1128 (7th Cir. 1998); *In re Pacific–Atlantic Trading Co.*, 27 F.3d 401, 403 (9th Cir.1994); *In re Pudgie's Development of NY, Inc.*, 239 B.R. 688, 692–693 (S.D.N.Y.1999). The Amendments added § 365(d)(3), which provides that a lessee's obligations under an unexpired lease of nonresidential real property must be timely performed until such lease is assumed or rejected. 11 U.S.C. § 365(d)(3).[3] The purpose of section 365(d)(3) is "to ameliorate the immediate financial burden borne by lessors of

---

**3.** As amended, § 365(d)(3) provides as follows:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such a lease or under this title.

nonresidential real property during the period in which trustees decided whether to assume a lease." *In re Pacific–Atlantic Trading Co., supra,* 27 F.3d at 403, citing 130 Cong. Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch). It has been noted that "the legislative history demonstrates a concern about the unfairness which occurs when a landlord is forced, in effect, to extend credit to the bankruptcy estate prior to assumption or rejection of the lease." Norton, *Bankruptcy Law and Practice 2d* § 39:42 (1983).

Prior to the 1984 Amendments landlords had a right to post-petition rent as an administrative expense of the bankruptcy estate under § 503(b)(1), but only to the extent that the lease payments were "actual, necessary costs and expenses of preserving the estate..." 11 U.S.C. § 503(b)(1). The benefit to the estate was determined on a case by case basis by determining the value of the use of the space to the debtor. "Lessors were entitled to an administrative priority for occupancy of the premises, but only to the extent allowed under section 503(b)(1), which was an amount equal to the reasonable value of the debtor's actual use and occupation of the property." *In re Pacific–Atlantic Trading Co., supra,* 27 F.3d at 403. Such valuation was problematic because it permitted a trustee or debtor in possession to make minimal or no payments for "use and occupancy" where the premises were later deemed of little value to the estate, especially where they had been vacated but not surrendered. Cherkis & King, *Collier Real Estate Transactions and the Bankruptcy Code,* ¶ 3.01[2][b][ii] (1988).

■ Section 365(d)(3), which provides for timely performance of all obligations under the lease "notwithstanding section 503(b)(1)," gives a landlord the right to payment at the lease rate without a show-

ing that such obligation is of benefit to the estate. The enactment of § 365(d)(3) "has virtually eliminated any argument for measurement of the trustee's obligations by the value of the premises to the estate, and therefore requires payment of the full lease rent whether the space has greater or lesser market rental value or whether the trustee is making full or no use of the premises." Cherkis & King, *supra,* ¶ 3.01[2][b][ii]. Most courts have found § 503(b)(1) to be superceded by § 365(d)(3); to hold otherwise "would flout the intent of Congress in that the landlord would still be forced to provide current services while awaiting an evidentiary hearing to determine the actual amount the debtor owed it." *In re Wingspread Corp.,* 116 B.R. 915, 926 (Bankr.S.D.N.Y. 1990); *see also In re Pacific–Atlantic Trading Co., supra,* 27 F.3d at 405 (noting that, prior to assumption or rejection, a lessor is entitled to the rent due under the lease regardless of any benefit to the estate); *In re Pudgie's Development of NY, Inc., supra,* 239 B.R. at 692 (finding that the "benefit test" under § 503(b)(1) is inapplicable to obligations arising under § 365(d)(3)).

In the instant case the Debtor is paying rent at the Lease rate pursuant to § 365(d)(3) pending appeal of the adverse Civil Court Order, not some lesser amount based on the arguable benefit of the Lease to the estate. Here it is the Landlord that is seeking more than the Lease rate based on the alleged benefit that it might obtain from re-letting the space to a third party— *i.e.,* the alleged fair market value of the premises. The questions raised are whether Bankruptcy Code § 365(d)(3) covers the field in a case such as this and requires no more than payment of the rent stated in the Lease; and if the answer is no, whether any other governing provision of bankruptcy or non-bankruptcy law pro-

vides the Landlord with a right to "use and occupancy" at a fair market rate which is different from (and higher than) the stated rental in the Lease.

*The Effect of Section 365(d)(3)*

The Landlord offers two main points in support of its contention that § 365(d)(3) does not cover the field and preclude the Landlord from seeking more than the rent reserved in the Lease. First, it argues that § 365(d)(3) does not apply at all to the instant case, as it requires the trustee (or the debtor in possession) to "perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any *unexpired* lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." (emphasis added) It points out that the Civil Court decision found that the Lease was terminated by the Landlord as of December 15, 2000, and asserts that this Lease expired and is not covered by § 365(d)(3) at all. The Landlord's second argument is that it is in any event entitled to adequate protection, which in this case would require use and occupancy at a higher rate than that reserved in the Lease.

With respect to the Landlord's first argument, application of the provisions of § 365(d)(3) to "unexpired" leases, this Court's obligation to respect the decisions and orders of the State Court requires it to accept the Civil Court's finding that the Lease terminated as of December 15, 2000. But there is persuasive authority that a lease is "unexpired" for purposes of § 365(d)(3) if it has been terminated prepetition but can still be reinstated in accordance with State procedures. In *In re Stoltz*, 197 F.3d 625 (2d Cir.1999), the Second Circuit construed the term "unexpired" in a Vermont case where the debtor had also suffered an adverse State court decision. The court looked to the applicable State law and found that "a debtor who retains a possessory interest in a residential tenancy has an 'unexpired' lease at least until the writ of possession [the applicable writ in Vermont] is issued." *Id.* at 631. In reaching this decision the Court of Appeals noted that the debtor had filed for bankruptcy prior to the issuance of a writ of possession and before the time to appeal the judgment of possession had expired. *Id.* at 630. The Court expressly left open the question whether the lease would be deemed "unexpired" if the writ of possession had been issued at the time of the bankruptcy filing but had not been executed. But it cited with approval a Vermont case, *Couture v. Burlington Housing Authority (In re Couture)*, 225 B.R. 58, 65 (D.Vt.1998), that held that "a Vermont tenant can avoid eviction by paying rental arrearage before execution of writ of possession." 197 F.3d at 631. And it relied on a Seventh Circuit decision that held, in the words of the Second Circuit, 197 F.3d at 630, that "a lease is not considered to be expired for purposes of the [Bankruptcy] Code by a judgment of possession where tenant has power to revive [the] lease under applicable state law." *Robinson v. Chicago Housing Authority*, 54 F.3d 316, 321 (7th Cir.1995). *See also Hart Environmental Mgmt, Corp. v. Sanshoe Worldwide Corp. (In re Sanshoe Worldwide Corp.)*, 993 F.2d 300, 304 (2d Cir.1993), where the Circuit Court stated that "there was no termination of either the underlying lease" or a sublease where the tenant had tendered the rent prior to the issuance of the warrant and could, under State law, reinstate the tenancy.

In this case the Civil Court decision, holding that the Lease had earlier terminated pursuant to a conditional limitation clause, was rendered prior to the bankruptcy and may be equivalent to the issu-

ance of a "writ of possession" under Vermont law or a "warrant of eviction" under New York law. But there is no question here that a reversal by the State appellate court of the Civil Court decision would "reinstate" the tenancy and the Lease. There may also be other grounds on which to reinstate the Lease under applicable State law, a question that has not been considered by the parties. Indeed, in the instant case, a warrant of eviction had not been issued at the time of the Chapter 11 filing, and a judgment had not been entered.[4] The Lease, if reinstated, would still have 11 years to run, and the Debtor has far greater rights than a holdover with merely a naked right of possession and nothing more. Under these circumstances, where the Debtor is still in possession and can reinstate its rights under the Lease under applicable State law, the Lease is "unexpired" for purposes of § 365. *In re Stoltz, supra,* 197 F.3d at 630–31; *Robinson v. Chicago Housing Authority, supra,* 54 F.3d at 321.[5]

Other courts, while not specifically construing the meaning of the word "unexpired" in § 365, have also deemed the debtor's ability to appeal a State decision or order determinative in respect of a related question, whether the automatic stay remained in effect and permitted the bankruptcy to go forward. In *In re W.A.S. Food Service Corp.,* 49 B.R. 969, 972–73 (Bankr.S.D.N.Y.1985), the court held that the automatic stay continued in effect in order to allow the debtor to pursue its remedies in State court. The court found that even though the debtor no longer had legal interest in the property, it had an equitable interest in possession and the potential to reinstate the landlord-tenant relationship, and that while this interest was not sufficient to allow immediate assumption and assignment of a lease, it was sufficient to trigger the protections of the automatic stay and to justify its continuation. If the tenancy were reinstated, the Debtor could then assume the Lease. *See also In re Issa Corp.,* 142 B.R. 75, 77–78 (Bankr.S.D.N.Y.1992); *In re Onio's Italian Restaurant Corp.,* 42 B.R. 319 (Bankr. S.D.N.Y.1984). Similarly, in *In re GSVC Restaurant Corp.,* 10 B.R. 300, 302 (S.D.N.Y.1980), a case decided prior to the 1984 Amendments, the District Court found that a restaurant lease had been terminated and that the debtor had exhausted all legal means for opposing the eviction prior to the bankruptcy. However, it stated that, under New York law where "the termination of a lease has not been completed, or if it can be reversed by application of state procedures (so that the matter is still *sub judice* ), the trustee or debtor in possession may still assume such rights and pursue them." These decisions are consistent with the principle recognized by the Second Circuit that a debtor, whose legal rights have been terminated, nonetheless has an equitable interest based on bare possession which is afforded the protections of the automatic stay. *In*

---

4. Subsequent to the Chapter 11 filing, judgment was routinely entered by the Civil Court on the decision and order of the Civil Court, described above. Whether this was a permissible ministerial act, *Rexnord Holdings, Inc., v. Bidermann,* 21 F.3d 522 (2d Cir.1994), as the Landlord contends, or whether it constituted a violation of the automatic stay is not clear but may not have any practical import in this case. There is no dispute among the parties that the entry of the judgment could not have substantively affected the rights of the parties and did not provide the Landlord with any rights it did not have as of the filing date. *See In re Capgro Leasing Associates,* 169 B.R. 305 (Bankr.E.D.N.Y.1994).

5. It also bears noting that the Civil Court decision did not determine what rights, if any, the operating debtor, D.L. Restaurant, Inc., has to the premises, as it was not a party to the State Court litigation at all.

*re 48th Street Steakhouse,* 835 F.2d 427, 430 (2d Cir.1987).[6]

 In any event, it is not clear how the Landlord here would benefit from a holding that the Lease had expired and § 365(d)(3) does not apply. The Landlord, in its papers, has focused on its alleged losses due to its claimed inability to re-let the premises immediately at a "market rent." This misses the point. If the Landlord is not entitled to the benefits of § 365(d)(3), it must justify its claim to an administrative expense under § 503(b)(1), and under § 503(b)(1) the most important factor is the benefit conferred upon the debtor's estate, rather than the loss to the landlord. "The Second Circuit has consistently held that the debtor must derive a benefit under a contract in order for the creditor's claim to be accorded administrative expense priority." *In re R.H. Macy & Co., Inc.,* 170 B.R. 69, 77–78 (Bankr. S.D.N.Y.1994) (citations omitted); *see also Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir. 1986) (finding that an expense is administrative only if it arises out of a transaction between the creditor and the debtor-in-possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business). As the Second Circuit stated in a case under the Bankruptcy Act, claims are accorded priority in accordance with the "equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him." *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 126 (2d Cir.1960).

Based on the foregoing principles, prior to the adoption of § 365(d)(3), in considering whether landlords were entitled to an administrative priority for post-petition rent under § 503(b)(1), bankruptcy courts considered the extent to which the debtor benefitted from the use of the premises. *See, e.g., Diversified Services, Inc. v. Harralson,* 369 F.2d 93 (5th Cir.1966) (per curiam); *In re Cardinal Export Corp.,* 30 B.R. 682 (Bankr.E.D.N.Y.1983). A principal issue in those cases was not the harm to the creditor but the benefit to the debtor, and in adopting the 1984 Amendments Congress determined to correct a perceived injustice, where the landlord had to provide the tenancy but was not assured of any payment. The correction was to assure the landlord of "timely performance of all the obligations of the debtor ... under any unexpired lease of nonresidential real property" (with exceptions not relevant here), including the payment of lease rent. Section 365(d)(3) requires nothing less—but also nothing more. "There is no indication that Congress

---

**6.** Indeed, the Landlord has conceded that "courts have recognized that a debtor may, however, still have some protectable interest with respect to a lease notwithstanding that there has been a conditional-limitation termination, or issuance of a warrant: the tenant may have some interest just by virtue of possession; or because it still has a right to seek *vacatur* of the *warrant;* or because it may still have a right to appeal." Landlord's Response to the Debtor's Motion, filed May 29, 2001, p. 4 (citations omitted). The Debtor's pending appeal and the fact that the State court did not set any conditions on that appeal that the Debtor has not met distinguish the facts of this case from those in *In re Policy Realty Corp.,* 242 B.R. 121 (S.D.N.Y.1999), *aff'd,* 213 F.3d 626 (2d Cir.2000) (unpublished decision). There the debtor had failed to satisfy conditions imposed by the State court on its ability to seek to vacate a lease forfeiture that had already taken place. Here, the State court determination that the forfeiture occurred is clearly not final. Moreover, the Debtor here is currently in possession of the premises, whereas the *Policy Realty* debtor had no possession at all.

meant to go any further than to provide a landlord an exception to 503(b)(1)..." *In re Handy Andy Home Improvement Centers, Inc., supra,* 144 F.3d at 1128. Accordingly, since the 1984 Amendments were adopted, courts have specifically conditioned a debtor's right to pursue State court remedies on payment of rent at the lease rate—but not at a higher rate. *See In re Joker Enterprises, Inc.,* 1995 WL 626372 (Bankr.S.D.N.Y.1995) (the court conditioned the debtor's right to seek vacatur of the warrant of eviction in the State court on payment of the lease rate rent pursuant to § 365(d)(3)); *In re BKB Ent.,* 97 B.R. 170 (Bankr.S.D.N.Y.1989) (the court conditioned the stay pending appeal on payment of rent).

If, as the Landlord asserts, it is entitled to use and occupancy at an amount higher than the rent in the Lease, this Court would be required to hold a hearing on the value of the premises to the estate. The issues would include not only the monthly rental of the property on Third Avenue, but many other factors which might reduce the value of the Lease to the Debtor's estate, including the extent to which the scaffolding currently in place detracts from the value of the property and the current condition of the premises (the Landlord's own papers assert that the premises require structural repair at a cost of approximately $450,000). The Landlord cites *Park Murray Associates, LLC. v. Heavy Hands, Inc.,* 1/24/2001 N.Y.L.J. p. 26, (col.1) (App. Term 1st Dept. 2001), in which a State court held that market value "depends upon the circumstances of every individual case; the length of the term and conditions of the lease, the character of the property, its location, the readiness with which it may be let, the condition of the building, whether substantial and durable, or requiring frequent repairs, the uniformity of rents in the neighborhood or their fluctuating char-

acter; in short, every material consideration which would enter into the mind of a purchaser of the term..." Based on the foregoing factors this Court might ultimately conclude that the value of the Lease to the Debtor's estate is in fact less than the current rent reserved in the Lease. This is the type of uncertain, lengthy, expensive analysis which Congress, in enacting § 365(d)(3), sought to have the courts forgo. *In re Wingspread Corp., supra,* 116 B.R. at 926.

The Landlord further contends that in State court it would be entitled to use and occupancy based on the "fair market value" of the Lease, that under State law such "use and occupancy" would be payable in a holdover proceeding dating from the deemed termination of the lease in December, 2000 and that the State courts would require such payments as a condition to a stay pending appeal. It then concludes that these State rules must apply in this bankruptcy case, even though the State court never ruled on the issue. There is a surface attraction to the Landlord's argument. If a major goal of the bankruptcy is for the debtor to appeal in the State court, should not State court rules apply in the context of setting an amount for "use and occupancy" pending appeal? This would comport with the principle that bankruptcy should not ordinarily alter rights created under State law, unless there is a countervailing bankruptcy right at issue.

The short answer to the Landlord's argument is that there are core bankruptcy principles at stake that implicate the rights of the Debtor, as well as the rights of other creditors. It is beyond dispute one of the key principles of Chapter 11 of the Bankruptcy Code, as well as its predecessor, is to provide a debtor with relief from creditor pressure and litigation during a period in which it can attempt to marshal

its assets, negotiate with its creditors and formulate a reorganization plan. *See In re C–TC 9th Avenue Partnership*, 113 F.3d 1304, 1309–1310 (2d Cir.1997); *In re Lane Foods*, 213 F.Supp. 133 (S.D.N.Y.1963). In *Lane Foods, Inc.*, which was decided under the Bankruptcy Act, Judge Weinfeld discussed the need of a court of equity to balance the landlord's right to compensation and the debtor's right to reorganize under the bankruptcy laws. "The payment for use and occupation has been referred to by Judge Learned Hand as 'an equitable quid pro quo for the possession which it seizes' imposed by the Court, and that the debtor 'in possession' is for all practical purposes a trustee or receiver, protecting not only its own interests, but those of creditors as well." 213 F.Supp. at 136 (citations omitted). The court emphasized that maintaining an ongoing business was critical to the debtor's ability to reorganize and found that the landlord's right to obtain possession could be stayed in furtherance of that reorganization, provided that use and occupation was paid to the landlord. The court affirmed the referee's grant of a stay conditioned upon payment of use and occupancy at the lease rate weekly in advance, stressing that the "nature of the proceeding contemplates the continued operation of the business; cessation of the business would leave nothing to rehabilitate." *In re Lane Foods, Inc., supra*, 213 F.Supp. at 135.

Of the many cases in which tenants have filed in bankruptcy at some stage in the State court eviction process, including some cited above in which the filing occurred after the issuance of the warrant of eviction and after the tenancy had been "terminated" under State law, none conditioned the Debtor's right to pursue the appeal in State court on compliance with "use and occupancy" principles merely because they would apply in the State system.[7] Indeed, the Landlord has not cited a case that has required the debtor tenant to pay "use and occupancy" at a higher amount than the rent reserved in the Lease. The Landlord relies on an unreported order of this Court in *In re Pinnacle Industries*, Case No. 98–40061, *Order Compelling Payment of Administrative Rent*, March 16, 1998, where the debtor was required to pay "use and occupancy" into escrow at an amount that was double the normal rent reserved in the lease as a condition to maintenance of an appeal. That order, however, was based on the fact that the lease itself provided for double rent as "use and occupancy" in the event that the tenant held over after the expiration or termination of the lease. There is no such provision in the Lease at bar. The Landlord also cites *In re Mastercraft Record Plating, Inc.*, 32 B.R. 112 (Bankr. S.D.N.Y.1983), decided prior to the 1984 Amendments, as a case where the bankruptcy court set "use and occupancy" at approximately double the regular lease

7. The Landlord cites several cases as authority in support of the proposition that State law principles should not be overridden in bankruptcy court but none is remotely on point. The court in *In re C–TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir.1997), focused on whether, on the date of filing, the debtor had a good faith intent to reorganize, not whether to follow State court procedures. *In re Marsch*, 36 F.3d 825 (9th Cir.1994), was a case in which a debtor, with the ability to post a bond in accordance with state procedure, was found to have filed in bad faith. The court left open the issue of whether a debtor would be considered to have filed in bad faith where it was unable to post a bond. In *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849 (Bankr.S.D.N.Y.1984), the court concluded that the debtor filed with the intent, not to reorganize, but to relitigate, and dismissed the case. Here, the Landlord has conceded that the Debtor has a compelling need to reorganize financially and has not moved to dismiss the case.

rate. However, as in *In re Pinnacle Industries*, the lease there contained a penalty rate in the event the debtor held over and that rate was more than double the regular rent. The court declined to fix "use and occupation" at the penalty rate provided by the lease and instead set it at a lower rate.

The law is clear that the Bankruptcy Code does not permit a debtor to re-litigate an issue already determined in State court, but it is equally clear that bankruptcy principles become paramount at the point of the filing, where the State process lets off. On a filing the automatic stay becomes effective so as to relieve the debtor from the need to obtain a stay pending appeal, and all of the other provisions of the Bankruptcy Code, including §§ 365(d)(3) and 503(b)(1), take effect. In *Cohoes Industrial Terminal Inc.*, 931 F.2d 222, 228 (2d Cir.1991), the court held that a debtor would not be able to re-litigate an issue already determined in State court; however, where a collateral attack on the State court's jurisdiction to issue the judgment could still have been brought in State court, the Second Circuit indicated it could be pursued in bankruptcy court.[8] Nor was it suggested in the largest Chapter 11 case, where the debtor filed for bankruptcy in order to stay the enforcement of a State judgment without the necessity of filing an appeal bond, that the judgment was not properly stayed pending appeal by the automatic stay, without regard to the

principles that might apply in State court. *See Kirk v. Texaco*, 82 B.R. 678, 679–80 (S.D.N.Y.1988).[9]

■ There is no question in the instant case that the Civil Court order must be respected. However, on and after the date of the filing, this Court is also obligated to consider, in establishing the conditions of the appeal, bankruptcy policies that include the interests of creditors, the policy that provides a debtor with a reasonable opportunity to rehabilitate itself, and the fact that the "bankruptcy court does not look with favor upon forfeiture clauses in leases. They are liberally construed in favor of the bankrupt lessee so as not to deprive the estate of property which may turn out to be a valuable asset." *Finn v. Meighan*, 325 U.S. 300, 302, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945); *see also Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202, 204–205 (2d Cir.1974).

*Adequate Protection*

■ The Landlord has also moved for relief from the automatic stay, claiming that it is entitled to, and has not received, adequate protection of its interest in the leasehold. This raises issues that are similar to the issues discussed above but should be considered separately. In analyzing the Landlord's demand, the first question is whether it is entitled to adequate protection and the second is whether, under the facts of this case, adequate

---

**8.** In *In re Lady Liberty Tavern Corp.*, 94 B.R. 812 (S.D.N.Y.1988), the court found a State decision as to a lease termination binding. But it did not rule out the possibility that a motion to vacate the default judgment might properly be brought in State court; it left the determination as to whether the stay would be continued pending such motion for the bankruptcy court. 94 B.R. at 817, n. 3.

**9.** *See also* the opinions of four justices of the Supreme Court in *Pennzoil Co. v. Texaco Inc.*,

481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Justices Brennan and Marshall said in their concurring opinion that Texaco could get the benefit of the automatic stay in bankruptcy court while its state appeal went forward, 481 U.S. at 18, 107 S.Ct. 1519; Justice Stevens expressed a similar view, 481 U.S. at 32, n. 6, 107 S.Ct. 1519; and Justice Blackmun, who also concurred separately, did not suggest there was a good faith issue. *Id.* at 28, n. *, 107 S.Ct. 1519.

protection requires more than payment of rent in the amount reserved in the Lease. The applicable statutory provision is § 362(d)(1) of the Bankruptcy Code, which provides that the court "shall grant relief from the stay ... for cause, including the lack of adequate protection if an interest in property ..." Section 361 of the Code describes certain ways a debtor can provide adequate protection, but does not define it.

Several early cases held that only secured creditors are entitled to adequate protection and that lessors had only the right to move under § 365 for an order requiring the debtor to assume or reject the lease and for an interim payment of use and occupation. *See In re Wheeling–Pittsburgh Steel Corp.*, 54 B.R. 385 (Bankr. W.D.Pa.1985), *aff'd*, 67 B.R. 620 (W.D.Pa. 1986); *In re Sweetwater*, 40 B.R. 733 (Bankr.D.Utah 1984), *aff'd*, 57 B.R. 743 (D.Utah 1985). More recent cases assume that lessors of real property have a right to adequate protection and can seek relief from the automatic stay for cause, including lack of adequate protection. *See, e.g., In re Eclair Bakery Ltd.*, 255 B.R. 121, 136 (Bankr.S.D.N.Y.2000) (court noted that continuation of the stay may be conditioned on adequate protection to the landlord); *In re Joker Enterprises, Inc.*, 1995 WL 626372 (Bankr.S.D.N.Y.1995) (same); *In re B.K.B. Enterprises, Inc., supra*, 97 B.R. 170 (same). A landlord's right to adequate protection seems to follow clearly from the language of § 363(e) of the Bankruptcy Code, which provides that:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

*See also* Cherkis & King, *supra*, ¶ 3.01[2][b][ii].

Since the 1984 Amendments to the Bankruptcy Code, several courts have specifically held that a Landlord's right to timely payment of post-petition rent constitutes an interest in property entitled to adequate protection. *See In re Ernst Home Center, Inc.*, 209 B.R. 955, 966 (Bankr.W.D.Wash.1997) (real property lessors may request adequate protection under § 363(e); court noted that the right to payment under § 365(d)(3) would be hollow without a remedy); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 946 (Bankr.W.D.Tex. 1994) (the enactment of § 365(d)(3) abrogated any argument against the entitlement of a landlord to adequate protection); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 (Bankr.W.D.Wash.1994) (landlord's right to be kept current on post-petition obligations is entitled to adequate protection). But among the cases which have discussed a landlord's entitlement to adequate protection, none has been found in which the court held that a lessor was entitled to adequate protection payments at an amount higher than the rent reserved in the lease, or an amount based on the possibility that the landlord might be able to relet the property for a higher amount pending assumption or rejection of the lease. Indeed, in *In re Ernst Home Center, Inc., supra*, the court found that real property lessors are entitled to adequate protection under § 363(e), but that such protection is provided where the debtor makes ongoing current payments under the lease pursuant to § 365(d)(3). "Adequate protection is not meant to be a guarantee that a creditor will be paid in full. Instead, the Court must determine whether the landlord's interests are protected as nearly as possible against possible risks to that interest." 209 B.R. at 968–969 (citations omitted).

Prior to the 1984 Amendments several courts considered the issue of adequate protection for landlords and concluded that landlords were entitled to such protection, within the limits of the terms of the lease. *See In re Wheeling–Pittsburgh Steel Corp., supra,* 54 B.R. at 390 (noting that "some courts have held that lessors are entitled to adequate protection pending a decision to assume or reject a lease"). In a Chapter 13 case, a court found that "the adequate protection required for a lessor is the performance for which he has contracted." *In re Dabney,* 45 B.R. 312, 313–314 (Bankr.E.D.Pa.1985) (citations omitted).[10] The Landlord incorrectly cites two of these cases in support of the proposition that courts have required additional protection beyond payment of rent at the lease rate. In *In re A.L.S., Inc.,* 3 B.R. 107 (Bankr. E.D.Pa.1980), the stay was continued on condition that the debtor pay rent under the lease and also provide the landlord with a security deposit. However, in that case, the lease itself required a security deposit. In *In re Allen Carpet Shops Inc.,* 25 B.R. 595 (Bankr.E.D.N.Y.1982), the debtor sought to sublet an assumed lease. The court noted that a landlord is normally limited to the performance for which it has contracted under the lease and its discussion of additional obligations related to adequate assurance at the time of assumption.

Since the adoption of the 1984 Amendments, those courts that have held that a landlord is entitled to adequate protection have routinely conditioned the debtor's right to pursue State court remedies on the payment of the rent reserved under the lease—and nothing more. In *In re Joker Enterprises, supra,* 1995 WL 626372, execution of a warrant of eviction was stayed when the debtor filed for bankruptcy. The court noted that continuation of the automatic stay was contingent on the debtor providing the lessor with adequate protection. Noting the importance of the lease as the debtor's principal asset, and that the landlord would be made whole upon an assumption and assignment of the lease, the court continued the automatic stay in order to provide the debtor with the opportunity to seek to vacate the warrant, contingent only on the debtor curing post-petition defaults and remaining current under the lease as obligated under § 365(d)(3). In *In re B.K.B. Enterprises, Inc., supra,* 97 B.R. at 170, the debtor's right to maintain possession of the premises was dependent on the successful appeal of an adverse State court determination. The Bankruptcy Court continued the stay, and the debtor was permitted to remain in possession contingent on the current payment of rent at the lease rate.

Only one court has suggested that a lessor's right to adequate protection might extend beyond § 365(d)(3). In *In re RB Furniture, Inc.,* 141 B.R. 706 (Bankr. C.D.Cal.1992), the court found that § 363 "sets forth the conditions under which a debtor may use property in which others have an interest, including lessors." *Id.* at 713. The court then suggested that adequate protection under § 363(e) might be broader than the rights encompassed under § 365(d)(3), noting that "adequate protection is a fluid concept that reflects all the circumstances surrounding a debtor's

---

**10.** Prior to the filing the debtors there had appealed an adverse State court determination and were required to escrow monthly rental payments as a condition to a stay of enforcement of the decision below. The debtors failed to meet this condition, and the landlord moved for relief from the automatic stay based on a lack of adequate protection. The court denied the landlord's motion and ordered the debtors to make future payments of the rent, without prejudice to the landlord's right to renew its motion if the debtors failed to make such payments.

use of property, while § 365(d)(3) deals solely with debtor's performance of its obligations under the contract. It could be that the mere performance of the debtor's obligations under the contract would not provide adequate protection for the party in interest." *Id.* at 713–714. But it actually held that the debtor would only be required to set aside the minimum monthly rent under the lease, without regard to a lease amendment that provided for an abatement of the rent if the debtor were not otherwise in default. *Id.* at 714.

In considering the right of the Landlord here to adequate protection payments beyond what it is entitled to under § 365(d)(3) and the Lease, it is necessary to examine the seminal decision on adequate protection, *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). There the Supreme Court sought to "determine whether undersecured creditors are entitled to compensation under 11 U.S.C. § 362(d)(1) from the delay caused by the automatic stay in foreclosing on their collateral." *Id.* at 369, 108 S.Ct. 626. The Court stated that if the collateral were declining in value during the course of the bankruptcy proceeding, the creditor would be entitled to compensation in the form of cash payments or additional security to compensate it for such loss. *Id.* at 370, 108 S.Ct. 626. But the Court held that an undersecured secured creditor is not entitled to compensation, in the form of interest or otherwise, on account of its ability to seize the collateral and put it to a higher and better use, or the " 'use value' of his collateral." *Id.* at 374, 108 S.Ct. 626. The Court reasoned, among other things, that payment of interest to an undersecured creditor would effectively constitute payment on the unsecured portion of its debt, and would frustrate the purpose of the Bankruptcy Code's absolute priority rule,

under which payment preference cannot be made to one member of a creditor class over another. The Supreme Court in *Timbers* made it clear that an undersecured creditor "is not entitled to interest on its collateral during [bankruptcy's automatic] stay to assure adequate protection under 11 U.S.C. § 362(d)(1)." *Id.* at 382, 108 S.Ct. 626.

■ Like most adequate protection cases, *Timbers* involved a secured creditor's motion for protection, and application of the case to an unsecured lessor of real property is not simple. But the application of *Timbers'* core principles to a landlord's motion for adequate protection leads to the conclusion that a landlord, like an undersecured secured creditor, is not entitled to compensation for the loss, occasioned by the automatic stay, of its ability to take possession of property and apply it to a higher and better use. In the context of a secured creditor's motion for adequate protection, compensation for loss of use of its collateral would usually be interest at a market rate. For a landlord, it would be a higher rent from another tenant. But as the *Timbers* court reasoned with respect to the rights of a undersecured lender, "Congress did not wish the undersecured creditor to receive interest on his collateral during the term of the stay," in part because such interest payments would represent recovery on the *unsecured* portion of the debt. *Timbers, supra,* 484 U.S. at 380, 108 S.Ct. 626. On the same analysis, Congress would not want a landlord to receive payments in excess of the amounts bargained for in the lease, on the ground that these additional payments would constitute payments on unsecured debt.

In light of the *Timbers* decision, one would be hard-pressed to come up with an explanation as to why a landlord, with only an unsecured interest, would be entitled to

lost opportunity costs during the duration of the bankruptcy stay. The Court in *Timbers* noted the importance of equality among members of a class of creditors. Through the 1984 Amendments Congress evidenced a similar concern. Congress sought to place landlords on the same footing as other creditors providing ongoing services to a debtor. Prior to the Amendments landlords were forced to subsidize a debtor's bankruptcy, in that, unlike any other creditor doing business with a debtor, they were forced to provide ongoing services without receiving payment. *See In re Handy Andy Home Improvement Centers, Inc., supra,* 144 F.3d at 1128. There is a distinction, however, between requiring a debtor to perform under a lease in order to place the landlord in a position equal to other creditors who provide ongoing services, and requiring a debtor to pay the landlord damages for lost opportunity costs above and beyond that which was bargained for in the lease in effect on the date of the filing of the petition. As a general principle, a holding that adequate protection includes the type of payments sought here by the Landlord would give a lessor rights that under *Timbers* an undersecured secured creditor does not have.[11]

▉▉▉▉ In addition to its claim to a lack of adequate protection of its interest in the property at issue, the Landlord has also claimed that "cause" exists to terminate the automatic stay because this Debtor has failed to show that it can reorganize. The short answer to these assertions is that they are premature. As recognized by the Supreme Court in *Timbers,* a debtor need not make as strong of a showing of likelihood of reorganization during the initial four months of the case as might be required later. *Timbers, supra,* 484 U.S. at 376, 108 S.Ct. 626. During the early stages of bankruptcy a determination that reorganization is not feasible is not favored, and any uncertainties are resolved in favor of the debtor. *See In re 6200 Ridge, Inc.,* 69 B.R. 837, 843 (Bankr. E.D.Pa.1987). The Landlord did not establish on this motion that the Debtor's attempt to reorganize is doomed.

In *In re 611 Sixth Avenue Corp.,* 191 B.R. 295, 302–303 (Bankr.S.D.N.Y.1996), the court extended the debtor's time to assume or reject a lease, over the landlord's objection that the lease had been terminated pre-petition pursuant to a conditional limitation, based on the following factors: the case was only four months old, the debtor needed more time to resolve the issues and determine "whether it can or will assume or reject the lease," the lease was the debtor's primary asset, the debtor was currently operating a restaurant on the premises, and the lease appeared essential to a plan. All of the *In re 611 Sixth Avenue Corp,* factors are present here. The sole business of this Debtor and its affiliate is conducted on the premises at issue and loss of the Lease would necessarily result in cessation of that business. This Debtor, like all others, is entitled to the opportunity to attempt a reorganization, and at the early stages in the

---

11. The Landlord attempts to utilize the Supreme Court's analysis in *Timbers* to liken its own position to that of a secured mortgagee with an "interest in the rents generated [by] the property," by virtue of the fact that it is both the fee holder and landlord of the premises at issue. The problem with the Landlord's analysis is that while the Landlord is both the fee holder and a conveyor of an interest in that fee, the issue before the Court is what adequate protection encompasses. The Landlord is perhaps correct that it "is entitled to full adequate protection of all its interests," but such a conclusion gives little insight into what that adequate protection might encompass. It does not include lost opportunity costs.

case this principle weighs heavily in the Debtor's favor. As noted above, the Landlord admits that the Debtor requires rehabilitation, and cites as evidence the existence of large prepetition tax claims that may relate to trust fund taxes. The Landlord argues that the presence of these claims indicates that the Debtor is guilty of mismanagement or misfeasance and that this constitutes "cause" for a grant of relief from the stay. But there is no indication that post-petition taxes are not being paid, and even if the existence of trust fund tax claims were an indication of prepetition mismanagement, the remedy is not to turn over the premises to the Landlord and make it far less likely that the taxing authorities, along with the other creditors, would ever receive any distribution from these estates.

Finally, it bears noting that the hardship to the Landlord of granting the Debtor a reasonable opportunity to appeal the adverse State court decision and to reorganize is minimal. Indeed, counsel conceded that the value of the Lease was of no consequence to the present Landlord when it acquired the Lease last year as a very minor part of a much larger transaction, when it presumably also knew there was an ongoing dispute with the Debtor of uncertain outcome.

The foregoing does not indicate that if circumstances change, the Landlord cannot renew its motion for relief from the automatic stay or seek to dismiss or convert the case under § 1112 of the Bankruptcy Code or to appoint a trustee under § 1104. Moreover, the Landlord can seek relief if the Debtor fails to make post-petition payments in accordance with § 365(d)(3) and to obtain a prompt decision on the appeal in State court. Moreover, it seems essential that the Debtor move forward with this case; for example, if it has any claims based on the scaffold-

ing, it should commence appropriate proceedings promptly.

Based on the foregoing, the Landlord's motion for "use and occupancy" or "adequate protection payments" at an amount in excess of the rent reserved in the Lease is denied. The Debtor is directed to settle an appropriate order and to schedule a case conference as soon as practical.