**In re KARTA CORP., Karta Container & Recycling, Inc., Global Recycling & Collection, Inc., Debtors.**

**Global Land, Inc., Global Recycling and Collection, Inc., Plaintiffs,**

**v.**

**Mayor and Members of the Common Council of the City of Peekskill, Defendants.**

Nos. 02–B–22028 (ASH) to 02–B–22030 (ASH), 03 Civ. 2498(CLB).

United States District Court, S.D. New York.

July 10, 2003.

## Memorandum and Order

BRIEANT, District Judge.

Filed on May 6, 2003, and heard on June 26, 2003 were Defendants'/Respondents' ("the City, or the City of Peekskill") Motion to Remand to New York State Supreme Court, County of Westchester, or for the Court to exercise Abstention with respect to second above entitled matter. Also heard was Plaintiffs'/Petitioners' ("Global Land and Global Recycling") motion filed on May 21, 2003, seeking: (1) Entry of Order Tolling Cure Period pursuant to C.P.L.R. § 7805 established pursuant to a Consent Order entered by the United States Bankruptcy Court for the Southern District of New York dated November 25, 2002 of certain findings of the Common Council of the City of Peekskill dated February 14, 2003; (2) a Preliminary Injunction pursuant to Fed.R.Civ.P. Rule 65 and 11 U.S.C. Section 105, 28 U.S.C. § 1651 and C.P.L.R. Sections 7801, et seq. to Enjoin Defendants from Terminating Plaintiffs' Permits and/or Operation of their Recycling Facility and Granting Related Relief; and (3) Consolidating the Trial of this proceeding with Karta Corp., et al. (Adv.Proc. No. 02–5332) (Prior Injunction Proceeding) and Karta Corp., et al. (Adv.Proc. No. 02–5314) (Contract Proceeding) pursuant to Fed.R.Civ.P. Rule 42(a).

The following facts appear from the submissions of counsel for the parties. Petitioners are business corporations organized in New York State. Global Land owns a parcel of real property in the City of Peekskill, County of Westchester, New York designated as Section 32.20, Block 2, Lot 5 (hereinafter "Global Land Property"). Global Recycling owns three contiguous adjacent parcels of real property designated as Section 32.20, Block 2, Lots 2, 3 and 4. All lots of Plaintiffs are in an "M–2A" Zoning district pursuant to the City of Peekskill Zoning Ordinance. The Zoning Ordinance, Section 300–38.1 authorizes with a Special Use Permit in the M–2A districts, the construction, maintenance and operation of recycling facilities.

On February 9, 1998, Peekskill authorized a Special Use Permit to Plaintiffs for all the parcels to be operated as one recycling facility. See Permit "Resolution No. J10" at Exh. A. Condition "h" in the Special Permit Resolution purported to allow Respondents to cancel the Special Permit, following a hearing, if there were a "material failure to strictly comply" with the conditions in the permit, and with a site

plan approval granted with the Special Permit.

Between 1998 and 2002, Plaintiffs spent over $4 million in site work and new building construction to comply with the Special Permit and Site Plan, and in the interim began the recycling of waste materials on the premises with consent of the City. When Plaintiffs were within nearly 75% of completion of the project, Plaintiffs allege that the City initiated hearings in January of 2002 for the purposes of revoking the Special Use Permit. On February 14, 2003, after the conclusion of all the hearings which ended November 2002, Respondents found Plaintiffs in breach of the Special Permit and gave Plaintiffs 60 days to remedy the violations, or the Special Permit would be cancelled. *See* Findings at Exh. B. The City found that the violations included the "outdoor storage limitations of [Plaintiffs'] approved (and, as yet, incomplete) site plan; failing to abide by [Plaintiffs'] permitted operating hours; failing to fully comply with New York State DEC regulations, and for allegedly violating City ordinance restrictions with respect to dust, noise, odors and other 'objectionable influences.' " The site plan does contain location and size limits regarding outdoor storage, but the City's DPW Director and Building Inspector conceded that the site was "in transition", that the site materials were either authorized as part of the recycling process or were the type generated by, or to be used in accordance with, the construction project. *See* Transcript of Hearing dated February 7, 2002, pp. 8–19, 22–24 and 56. The DPW Director testified that throughout the construction process, Plaintiffs had continued to meet their contractual obligations to the City regarding the processing and disposition of recyclables, yard waste, and similar products. *Id.* at pp. 12–13 and 22–23. Plaintiffs claim that they should not have been held guilty of violating a site plan

whose elements were in the process of being built.

In a 1991 meeting, former City Manager James Madaffari, recognized the interim condition caused by contemporaneous recycling operation and construction of the project:

> [W]hat he [Petitioner] is trying to do is he is trying to comply with his site plan, i.e.: the building, and in order to build and operate on the same site, you are correct, he is putting 10 lbs. of widgets on a 5 lb. site *in order to construct and operate at the same time.* The ultimate end of the operation . . . is you put one building on top, you build the second, he is in the process of a third, and there is a fourth being built, the entire operation will be indoors. *Its getting from A to B that is the problem.* (Emphasis Supplied—See Common Council Minutes, March 12, 2001).

Plaintiffs state that the storage, dust and noise found by the City were as much a consequence of the ongoing required construction at the site, as the recycling operation, which had the City's approval. Plaintiffs contend that the impact from the new construction did not justify revoking Plaintiffs' permit, which ordered the very same construction and that the only evidence of an alleged violation of operating hours were one or two complaining neighbors regarding the sound of backup alarms and "tailgate banging" after 7:00 PM. The evidence showed that all recycling activity was conducted within the authorized hours (Monday through Friday, from 7:00 AM to the sooner of 6:00 PM or dusk). Any other noise was generated by off-site vehicles making deliveries to other properties or by vehicles being repaired. Repairs to trucks do not constitute "recycling", and therefore do not implicate the special permit use.

The DEC witnesses conceded that the "violations" were mere observations, which might not have led to state enforcement procedures. In fact, the DEC never suspended or revoked Plaintiffs' operating license. On June 20, 2002, a Consent Order (Resp. Hearing Exh. M) was entered into with Plaintiffs.

Plaintiffs contend and the City does not deny that the delays in the project were in part due to the City's own failure for two and one half years to fulfill the "Travis Lane Abandonment" condition of the Special Permit, without which the Site Plan could not be completed, and without which the Plaintiffs would not be able to procure construction financing.

On January 9, 2002, the Debtors (Karta Corp., Karta Container & Recycling, Inc. and Global Recycling & Collection, Inc.) filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code and have remained in possession of their businesses and management of their properties as debtors-in-possession. The Debtors recently filed their Chapter 11 Plan and Disclosure Statement in an attempt to reorganize and emerge from the Chapter 11 proceedings.

The City's Findings were served upon Global Land on February 14th, 2003. Plaintiffs had sixty days to cure the violations, which expired April 17, 2003.

Petitioners filed this removed Article 78 proceeding in the Supreme Court of New York, Westchester County on March 11, 2003 seeking an order reversing, annulling and setting aside the City's Findings as erroneous in law, arbitrary, capricious, abuse of discretion, and unsupported by substantial evidence. Pursuant to New York C.P.L.R. § 7805, Petitioners request a stay of the running of the 60 day cure period specified in the Findings under review pending this Court's determination.

On April 10, 2003, Plaintiffs removed this case to this Court asserting that it is a "core proceeding" within 28 U.S.C. Section 157(b)(2)(A), (L) and (M) in that the action concerns: (1) the disposition and use of property of the estate, and (2) the activity of the Debtors (Karta Corp., Karta Container & Recycling, Inc. and Global Recycling & Collection, Inc.) to proceed timely in an attempt to reorganize under Chapter 11 of the Bankruptcy Code. Plaintiffs claim and the Court agrees that the action is integral to the federal bankruptcy proceedings of the Debtors, whether or not it is in fact a core proceeding.

■ In support of its Motion for Remand or Abstention. The City contends that this action is not a core proceeding, but at most is "related" to the litigation of the Debtors in Bankruptcy Court. This Court need not at present decide whether the proceeding is in fact, core, as claimed by the Debtors, or non-core and simply within the "related to" jurisdiction of the Bankruptcy Court. At the very least it is clear that the issues raised are critical to the efforts of the Bankruptcy Court to confirm a Plan for the Debtors in this case. Accordingly they are, if not core, clearly related to the pending bankruptcy proceedings and within our bankruptcy jurisdiction.

■ This Court adopts the analysis set forth by Judge Cote in *In re World-Com, Inc. Securities Litigation*, 293 B.R. 308, 317 (S.D.N.Y.2003):

[C]ases filed in state court may be removed to federal court if they are sufficiently related to bankruptcy proceedings. Section 1452(a) [of Title 28] permits the removal to federal court of any claim over which a federal district court has jurisdiction pursuant to Sec-

tion 1334 of Title 28 of the United States Code.

\* \* \* \* \* \*

In enacting Section 1334(b) [of Title 28] "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (citation omitted). Consequently, while "related to" jurisdiction is not "limitless" it does encompass "more than simply proceedings involving the property of the debtor or the estate." *Id.* Moreover, "related to" jurisdiction may extend more broadly when it concerns a reorganization under Chapter 11 as opposed to a liquidation under Chapter 7. *Id.* at 310, 514 U.S. 300, 115 S.Ct. 1493. The dominant standard for "related to" jurisdiction is that set forth by the Third Circuit in *In re Pacor, Inc. [v. Higgins],* 743 F.2d 984 (3d Cir.1984). The *Pacor* test states that a civil proceeding is "related to bankruptcy" if "the outcome of that proceeding could *conceivably have any effect* on the estate being administered in bankruptcy." *Id.* at 994 (emphasis in original partially removed); *see Celotex,* 514 U.S. at 308 n. 6, 115 S.Ct. 1493. For a federal court to have "related to" jurisdiction over an action,

> the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon The handling and administration of the bankrupt estate.

*Celotex,* 514 U.S. at 308 n. 6, 115 S.Ct. 1493 (citation omitted). Many circuit courts have derived their standard for

"related to" jurisdiction from the *Pacor* standard. *See, e.g., Arnold v. Garlock,* 278 F.3d 426, 434, (5th Cir.2001); *In re Toledo,* 170 F.3d 1340, 1345 (11th Cir. 1999); *In re Dow Corning Corp.,* 86 F.3d 482, 489 (6th Cir.1996); *In re G.S.F. Corp.,* 938 F.2d 1467, 1476 (1st Cir.1991); *In re Titan Energy, Inc.,* 837 F.2d 325, 330 (8th Cir.1988); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002 n. 11 (4th Cir.1986).

The Second Circuit clarified its reliance on the *Pacor* test in *In re Cuyahoga Equip. Corp.,* 980 F.2d 110 (2d Cir.1992).

\* \* \* \* \* \*

> The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have *any "conceivable effect"* on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the "related to" jurisdiction of the bankruptcy court.

*Id.* at 114 (emphasis supplied). Thus, in this Circuit, as elsewhere, whether an action has "any conceivable effect" on the bankruptcy estate determines whether a federal court has "related to" jurisdiction over the matter.

There is nothing mystical about the fact that this is an Article 78 proceeding as opposed to an ordinary civil action. In *Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855 (2d Cir.1988), the Court upheld removal pursuant to the "All Writs Act" at 28 U.S.C. § 1651. Removal here is not under the All Writs Act, but rather under 28 U.S.C. §§ 1452(a) and 1334(b). There is no limitation in 28 U.S.C. § 1334(b) which would appear to exempt an Article 78 proceeding from the jurisdiction of this Court. Accordingly reported cases indicating a reluctance to remove Article 78 Proceedings under the All Writs

Act are of no moment. For the same reasons relied on by Judge Cote, this Court declines to dismiss, abstain, or remand the case to the state court.

■ The City of Peekskill may not be allowed to delay or frustrate the reorganization of the Debtors by having this Court dismiss or remand. The Bankruptcy Court has equitable and legal powers to consider the issues. As this Court pointed out at the hearing on these motions, the pendency of reorganization proceedings cannot excuse non-compliance with those provisions in a special permit for land use which implicate the public interest or reflect compliance with the police power of the state as delegated to the City of Peekskill. The recycling plant must be brought into full compliance. However, the Congressional policy reflected in the bankruptcy laws, that debtors should be freed from the burdens of insolvency and reorganize, may not be frustrated by using the permitting power to effect the forfeiture of a valuable right (the Special Permit) without which the debtors are out of business.

■ This Court can and should enjoin activity that threatens the reorganization process. *Alert Hldgs., Inc. v. Interstate Protective Services, Inc.,* 148 B.R. 194, 200 (Bankr.S.D.N.Y.1992). All that need be shown to obtain such relief is that the conduct to be enjoined will prevent confirmation of a Plan of Reorganization; a substantial likelihood exists that movant will prevail on the merits; movant will suffer irreparable injury unless an injunction is issued; and that a balancing of the equities favors the movant.

Although there are disputed fact issues to be resolved, Debtors are likely to succeed on the merits since the Debtors made progress in completing the work under the Special Use Permit. Between the Debtors and the non-debtors, over $5 million is said to have been spent toward compliance.

Compliance involves actions well within the ability of the Debtors. Irreparable harm is present because the termination of Plaintiffs' business will occur, absent this Court's intervention. Debtor's ability to confirm a Plan will be frustrated. The recycling facility employs 110 employees, some of whom are minorities, and the Debtors' investment is in excess of $5 million. Recycling serves the public interest, as does the reorganization of debtors and the preservation of the value of their business. On a balancing of the equities, Plaintiffs are favored since no significant detriment will flow to the City if within a reasonable time to be fixed by the Bankruptcy Court, the deficiencies existing at the premises are cured.

Judge Hardin, the Bankruptcy Judge in this case, issued a temporary restraining order on April 30, 2003, enjoining the City from terminating the business operations at 1011 Lower South Street, but did not preclude the City of Peekskill from proceeding with its final determination regarding the Special Permit issued for the recycling facility. Judge Hardin suggested in *dicta* that the cure period might lapse but this is unimportant because the Court could order a further cure period.

It appeared at oral argument that Debtors claim, and the City denies, that they do not have an explicit list of what remains to be done to cure any violations and bring the Debtors into compliance with the Special Permit. Pre-trial discovery, which should be conducted under the supervision of Judge Hardin, in view of the close relationships between this case and the pending Adversary Proceedings, should resolve this issue. Plaintiffs argued the situation is "kafka-esq". This cannot be. Debtors are entitled to a clear and concise list of what they must do, today, to cure the

claimed violations, and on receipt of such a list, must do it with dispatch.

The Unsecured Creditors Committee argues that a deposition taken recently revealed that the City has a vested interest in putting the Plaintiffs out of business and taking their realty by eminent domain. The Unsecured Creditors point out that the police and regulatory power only concerns health and safety. Because there has been no evidence of an endangerment of human health, or any enforcement action by the New York State Department of Environmental Conservation, the City may not use its enforcement powers in aid of acquiring the property, by creating a reduction in the appraised value which would follow as a matter of course if the permit is lifted. The City denies any such machination and the Court accepts the denial.[1]

This Court can and should enjoin activity that threatens the reorganization process. "It is beyond dispute one of the key principles of Chapter 11 of the Bankruptcy Code ... is to provide a debtor with relief from creditor pressure and litigation during a period in which it can attempt to marshal its assets, negotiate with its creditors and formulate a reorganization plan." *In re P.J. Clarke's Restaurant Corp. and D.L. Restaurant, Inc.,* 265 B.R. 392, 401–02 (Bankr.S.D.N.Y.2001). Plaintiffs are in the process of confirming a plan which they have promised to the Bankruptcy Court within the next 120 days.

■ After pre-trial discovery is concluded and this case is trial ready, the Court will confer with counsel for the parties and also with Judge Hardin to determine by whom the removed case should be tried. The Court notes that the mere fact that plaintiff[s'] claim raises an issue of state law, rather than a purely federal issue, does not preclude a finding that the adversary proceeding is core. *In re Rosalind Gardens Assoc.,* 158 B.R. 15, 17 (S.D.N.Y.1993). *See also* 28 U.S.C. Section 157(b)(3) ("determination that a proceeding is not a core proceeding shall not be made solely on the basis that it a resolution may be affected by State law.") Were this Court to conclude that this a non-core proceeding, it would be "otherwise related" to the bankruptcy action under Section 157(c)(1) and the bankruptcy judge could try the case on consent of the parties, or in the absence of consent, the reference could be withdrawn and the case tried by this Court, 28 U.S.C. §§ 157(c) and (d). *In re Rosalind Gardens Assoc.,* 158 B.R. at 18.

### Conclusion

The Defendants' motion filed May 6, 2003 is denied in all respects. Plaintiffs' motion for preliminary injunctive relief is granted. Defendants are enjoined pending further order of this Court or the Bankruptcy Court from terminating the Special Permit, provided Plaintiffs proceed diligently and to the satisfaction of the Bankruptcy Court in curing any violations of the Special Use Permit, and refrain from creating new ones. Whether the removed case should be consolidated with the prior adversary Proceeding is deferred for resolution when the matter is trial ready, as is the issue of whether the case should be tried as a bench trial in the District Court, or before Bankruptcy Judge Hardin.

The matter is respectfully referred to the Hon. Adlai S. Hardin, United States Bankruptcy Judge to supervise all pre-trial proceedings, including the generation of a

---

1. Were any such scheme afoot it is reasonable to assume that the Debtors or the Creditors' Committee would also remove the Condemnation case to this Court under 28 U.S.C. §§ 1452(a) and 1334(b).

complete list of deficiencies under the Special Use Permit. Subject to such other or different directions which the Bankruptcy Court may make, Counsel are directed to complete all pre-trial proceedings by October 1, 2003.

A final case management conference will be held before this Court on October 3, 2003 at 9:00 a.m.

SO ORDERED.